Kenneth R. Moeller, *pro se*
405 W. Franklin Street
Tucson, Arizona 85701
kmoeller@hpzlaw.com
(520) 798-3803

FILED / RECEIVED / LODGED COPY
JAN 19 2010
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

**United States District Court**
**for the**
**District of Arizona**

CIV 10 35 TUC CKJ

| | |
|---|---|
| Kenneth R. Moeller | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| Health Net of Arizona, Inc., an Arizona corporation | ) |
| | ) |

**COMPLAINT**

Plaintiff, Kenneth R. Moeller, for his cause of action against the Defendant, Health Net of Arizona, Inc., an Arizona corporation, as and for his complaint alleges the following:

1.   Plaintiff's claims relate to an employee welfare benefit plan as defined by ERISA, 29 U.S.C. § 1001 et. seq. and the subject health benefit plan constitutes a "plan under ERISA." Therefor, Plaintiff alleges that this court has jurisdiction of this matter pursuant to 29 U.S.C. § 1132(e).

2.   Venue is proper within the District of Arizona pursuant to 29 U.S.C. § 1132(e) because the acts complained of have all occurred within this district.

3.   Plaintiff, Kenneth R. Moeller, (hereafter "Plaintiff") is, and at all relevant times was, a resident of Arizona.

4.   Plaintiff alleges upon information and belief that defendant, Health Net of Arizona, Inc. (hereafter "Health Net") is, and at all relevant times was a corporation duly organized and existing

under the laws of the State of Arizona and is authorized to transact and is transacting the business of insurance in Arizona.

5. Health Net is a subsidiary of Health Net, Inc., a publicly traded corporation that through its subsidiaries provides health plans in a number of states.

6. Plaintiff was a participant in a Health Net health benefit plan that was provided by the firm of Hecker, Phillips & Moeller, LLC to Plaintiff as a member of that firm.

7. The written health benefit plan provided health insurance coverage to the Plaintiff, his spouse and his dependents.

8. The health benefit plan was administered by Defendant.

9. Plaintiff's son, Kenneth Brett Moeller("Brett"), was diagnosed with osteochondritis dissecans which afflicted his left knee. In Brett's situation, this was a condition in which a portion of a bone in his knee lost its blood supply and eventually fragmented.

10. At all times pertinent to this lawsuit, Brett Moeller was the dependent of Plaintiff and as such was covered under Health Net's written insurance plan.

11. Plaintiff and Brett were insured by Health Net through a policy provided through Hecker, Phillips, and Zeeb, LLC.

12. After being diagnosed with osteochondritis dissecans in his knee, Brett underwent surgery in 2000 for an allograft osteochondral transplant wherein cadaver bone tissue and cartilage were used to replace the damaged bone area.

13. This first operation was of limited success since within two years the donor bone and cartilage became separated from the knee; causing pain and discomfort to Brett and limiting his mobility.

14. As a result of the failure of the first operation, Jon K. Nisbet, M.D., an orthopedic surgeon in Tucson, Arizona, recommended that Brett receive a surgical treatment consisting of taking

bone from his hip to replace the damaged bone in the knee and using a process of growing cartilage from a biopsy developed by Genzyme Biosurgery to place a layer of cartilage over the replaced bone surface of the knee.

15. On April 15, 2003, Dr. Nisbet performed a surgery on Brett's knee consisting of an iliac crest bone grafting of a femoral defect with a cartilage biopsy.

16. The biopsy of cartilage was sent to Genzyme Biosurgery for cartilage culture in anticipation of later implantation in Brett's knee.

17. Health Net paid for the procedures done on April 15, 2003.

18. On September 12, 2003, Health Net denied a request for pre-certification of the second step of the procedure recommended by Dr. Nesbit; that of a left knee arthrotomy with autologuous cultured chondrocyte implantation.

19. Health Net denied pre-certification for the autologous chondrocyte implantation procedure stating that it was an experimental, unproved and investigational health care procedure not covered by Health Net's plan.

20. By letter dated September 26, 2003, Plaintiff informally appealed to Health Net to reconsider its denial of the pre-certification of the surgery.

21. By letter to Plaintiff dated October 27, 2003, Health Net again stated its refusal to pay for this procedure under the Plaintiff's medical insurance policy, again claiming that it was an experimental procedure.

22. On December 18, 2003, Plaintiff filed a formal appeal with Health Net of the denial of the pre-certification stating that the procedure was not experimental.

23. By letter dated November 21, 2003, Dr. Nisbet also requested that Health Net reverse its decision and approve the autogenous cartilage implantation to resurface Brett's medial femoral condylar defect using the cartilage culture prepared by Genzyme Biosurgery.

24. On December 23, 2003, Health Net sent the case to the Arizona Department of Insurance for an External Independent Review of the pre-certification request.

25. The Arizona Department of Insurance denied the Plaintiff's appeal by a letter dated January 21, 2004 finding that the procedure was experimental.

26. By a letter dated January 23, 2004, Health Net informed the Plaintiff that having received a decision from and independent external review entity that concluded that the procedure was experimental or investigational, the denial of the pre-certification request was confirmed and Plaintiff's appeal process was concluded. A copy of the January 23, 2004 correspondence is attached hereto as Exhibit A.

27. Plaintiff subsequently discovered that, Health Net, Inc's national Medical Policy Advisory Group issued a Policy Statement, in March of 2003, that stated that autologous chondrocyte implantation was approved for Health Net beneficiaries. A copy of the Policy Statement is attached hereto as Exhibit B.

28. This Policy Statement approving autologous chondrocyte implantation was issued six months prior to Health Net denying pre-certification of the same surgery for Brett.

29. It appears from the Policy Statement that this procedure had actually been approved for Health Net beneficiaries and had been implemented in September of 1997, nearly six years before Plaintiff's pre-certification request.

30. Prior to denying Brett's request, Health Net had paid for at least five (5) similar autologous chondrocyte implantation surgeries in Arizona and as many as fifty-one (51) such procedures in the United States since 1997.

31. Brett met the criteria established by the Policy Statement for qualifying for the requested autologous chondrocyte implantation procedure.

32. The autologous chondrocyte implantation procedure approved by Health Net's own Medical Policy Advisory Group for Health Net beneficiaries was not described in the Policy Statement as experimental nor as investigatorial.

33. Health Net wrongfully concealed from the Plaintiff, from Brett's physicians and from the Arizona Department of Insurance that Health Net's established policy was to approve the procedure for patients such as Brett.

34. Health Net wrongfully denied pre-certification of the autologous chondrocyte implantation procedure for Brett as being an experimental procedure.

35. Health Net acted in direct contravention of its internal policies established by its Medical Policy Advisory Group.

36. After Plaintiff exhausted his administrative appeals against Health Net, Plaintiff paid for Brett's surgery out of Plaintiff's own retirement funds.

37. The autologous chondrocyte implantation operation was performed by William A. Grana, M.D. on March 16, 2004.

38. Plaintiff paid a total of over $26,110.46 in fees in connection with the operation consisting of physician fees to Dr. William Grana and Dr. Ann Carlson, hospital fees to the University Medical Center of Tucson, Arizona and fees to Genzyme biosurgery for the cultured replacement cartilage for the operation.

39. The operation was a success and now, nearly six years later, Brett regularly plays soccer in an adult recreational league and has no restrictions on the use of his knee.

40. Due to Health Net's disingenuousness in its dealings with the Plaintiff and the Arizona Department of Insurance and its blatant failure to follow Health Net's own internal Policy Statement in reviewing the pre-certification request for Brett's autologous chondrocyte implantation procedure, the Plaintiff is entitled to a *de novo* review of its appeal in this case.

41.     Health Net is liable to the Plaintiff for the amount of $26,110.46 representing the cost of the autologous chondrocyte implantation procedure paid for by the Plaintiff.

Plaintiff demands judgment as follows:

A.     Finding that Health Net wrongfully denied the coverage for the autologous chondrocyte implantation procedure for Plaintiff's dependant.

B.     Ordering Health Net to reimburse the Plaintiff for the $26,110.46 or more expended by the Plaintiff for the wrongfully denied procedure together with interest thereon at the Arizona statutory rate from January 24, 2004 to the present date.

C.     That the court award the Plaintiff any attorney's fees and costs that he may incur in this action.

DATED: January 19, 2010

*[signature]*
Kenneth R. Moeller
405 West Franklin Street
Tucson, Arizona 85701
kmoeller@hpzlaw.com
(520) 730-7932